## VAN TREESE *v.* UNITED STATES (No. 484).[1]

WHERE NO ACTUAL TENDER OF ENTRY WAS MADE.

It is unnecessary to determine whether the absence of an inspector would validate on a later day a tender of entry made during the inspector's absence, it appearing here no actual tender of entry was made of certain horses it was desired to import on August 5, 1909, and that the tender of entry was made in fact on August 6, 1909. The horses were rightly held dutiable as of that date under the act in force that day.

United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23890 (T. D. 30879).

[Affirmed.]

*Richardson & Doan* for appellant.

*Wm. K. Payne*, Deputy Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

It appears in this case that eight horses were brought into the United States from Mexico through the port of Douglas, Ariz., on August 6, 1909, and that a duty of $30 a head was assessed thereon under paragraph 227 of the tariff act of 1909. The protest sets forth that the horses were of American origin, and would have been entitled to free entry under the act of 1897; that the importer had the horses at the international line and was ready to make entry thereof on August 5, when the terms of the act of 1897 would have been applicable, but was unable to do so by reason of the absence of the sanitary inspector of the Bureau of Animal Industry, who was engaged in making inspections elsewhere. The importer claimed that it was through no fault of his that the importation was not made on August 5, when the

---

[1] Reported in T. D. 32036 (21 Treas. Dec., 565).

horses could have been returned free of duty, and claims the right to be relieved from the payment of duty imposed under the act of 1909.

The Board of General Appraisers held that it might well be conceded that the animals could not have been brought into the United States before having been examined by a Government inspector, yet that the importer, in order to place himself in a position to claim the right of entry, should have at least tendered an entry, and the board found that there was nothing in the record to show that a tender of entry was made, and that the absence of the inspector would not prevent the importer from making tender, thus placing himself in position to demand the rights of an entry under the previous law.

The importer's claim is stated in the petition for appeal to this court in the following language:

I claim the importer could not tender an entry on August 5, as the United States veterinary was not available for the preliminary inspection of the animals, which were being held on Mexican territory on account of entrance being refused, as no certificate of health could be had.

The importer has apparently since shifted his ground, as it is said in the brief of counsel that the record must unquestionably show that the acting deputy collector refused entry on the 5th of August, 1909, and that a refusal could not have been made by him unless there had been an offer of a tender of the animals. It would appear that the record could not have been before counsel who prepared the brief or else erroneous inferences from the facts appearing in the record have been drawn. It is said in his brief:

It further appears from the letter of the collector at Nogales * * * that the horses in question were at the international line and ready to be entered on August 5, 1909.

This is a misconstruction of what the report of the collector really was. In the letter submitting the protest, the collector said:

The principal contention of Mr. Van Treese is that the horses in question were at the international line and ready to be entered on August 5, 1909, the day before the new tariff act went into effect, and that he was prevented from entering them on that day by the absence of the sanitary inspector of the Bureau of Animal Industry, who was engaged in making inspections elsewhere.

The brief again states that the decision of the Board of General Appraisers shows the fact to be that the importers had the horses at the international line and ready and anxious to make entry thereof on August 5, 1909. What the board really stated in the opinion was that—

Objection to the payment of this duty is made for the reason, as set forth in the protest, * * * that the importer had the horses at the international line, and was ready and anxious to make entry thereof on August 5.

Counsel for the importer further says:

The protest, which is not controverted, shows not only that the animals were there but that they were refused entrance because no certificate of health could be had.

32354—VOL 2—12——19

Counsel for the Government do controvert the allegations of the protest. It is contended on behalf of the Government that it was incumbent on the importer not only to assert his claim in his protest, but to overcome the presumption in favor of the correctness of the collector's decision by actual proof of the facts asserted.

It will be seen that no evidence or allegations of an entry on August 5 or of tender thereof appears.

Section 29 of the act of 1909 provides that—

On and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, * * * shall be subjected to the duties imposed by this act and to no other duty, upon the entry * * * thereof.

We need not determine whether absence of the inspector would have afforded sufficient ground for accepting an inspection at a later date had entry been tendered on the 5th, as the record does not present this question. The case is one of apparent hardship, but we see no way open to relieve the importer.

Decision *affirmed.*